LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff,

v.

UNITED STATES of America, Defendant.

United States District Court
S. D. New York.

Nov. 5, 1956.

Thomas F. Keane, New York City, L. J. Ponzan, Sol Schreiber, Brooklyn, N. Y., of counsel, for plaintiff.

Paul W. Williams, U. S. Atty., New York City, Howard F. Fanning, Attorney, Department of Justice, Washington, D. C., of counsel, for defendant.

HERLANDS, District Judge.

Defendant, United States of America, has moved for summary judgment on two grounds: (1) that the Court lacks jurisdiction over the subject-matter of the action and over the person of the defendant; and (2) that there is no genuine issue as to any material fact.

Plaintiff, Liberty Mutual Insurance Company, has cross-moved for summary judgment on the ground that there is no genuine factual issue.

*The Background of the Action*

The action was instituted on December 16, 1955, under the provisions of the Tucker Act, 28 U.S.C.A. § 1346(a) (2), to recover the sum of $2,670.10. Plaintiff's claim arises out of the following factual background.

On or about December 27, 1945, one Louis Elias, a longshoreman employed by The Jarka Corporation, was injured while in the course of his employment aboard the steamship Sea Hydra, a vessel owned and operated by the United States of America and docked at Pier 29, Brooklyn, New York. At the time and place of the injury, The Jarka Corporation was performing stevedoring services aboard the Sea Hydra, pursuant to the terms of a stevedoring contract between The Jarka Corporation and the United States, entitled "Warshipsteve 3/1/44 North Atlantic" No. WSA-6983.

In conformity with the provisions of the contract, The Jarka Corporation had obtained from plaintiff its "Standard Workmen's Compensation and Employer's Liability Policy" No. W.C.–2C–81109–NY, effective from March 1, 1945, to March 1, 1946, insuring the liability of The Jarka Corporation under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.

This policy bore an endorsement, dated March 1, 1945, which read:

"Waiver of Subrogation Endorsement

"The company waives any right of subrogation against the United States of America which might arise by reason of any payment under the policy."

Because of the injuries suffered by him, Elias was entitled to compensation benefits and medical payments under the provisions of the Longshoremen's and Harbor Workers' Compensation Act. Plaintiff paid compensation benefits to Elias in the sum of $2,000 and made medical payments in his behalf in the sum of $670.10.

All of these expenditures were made without any order awarding compensation having been made by the United States Employees' Compensation Commission. The payments by plaintiff, totaling $2,670.10, have been retained by Elias. Plaintiff has not recovered any part of this total amount so paid.

Thereafter, and on or about September 30, 1947, Elias elected to prosecute a third-party action against the United States. He commenced such an action in the United States District Court for the Eastern District of New York by filing a libel charging the United States with negligence in its ownership, operation and control of the Sea Hydra, and with maintaining an unseaworthy vessel at the time and place of the accident.

During the pendency of this third-party action, plaintiff-insurance company notified the United States that it claimed an equitable lien in the sum of $2,670.10 in any recovery had by Elias against the United States in the third-party action.

Thereafter, under date of September 13, 1951, Messrs. Kirlin, Campbell & Keating, of counsel to the United States Attorney, wrote to plaintiff advising it that Elias' personal injury suit was going to be settled by the United States for the sum of $11,170.10; and further advising that, of this sum, the undisputed share of $8,500 was to be paid to Elias, and the remainder of $2,670.10 was being reserved by the United States pending a determination of plaintiff-insurance company's rights, if any, against the United States.

Likewise, under date of September 13, 1951, Messrs. Kirlin, Campbell & Keating wrote to Messrs. Zimmerman & Zimmerman, attorneys for Elias, advising them that the United States would settle the third-party claim of Elias for the sum of $11,170.10, by payment to Elias of $8,500, plus $2,670.10 to be retained, however, by the Government in escrow pending final determination by the Court as to whether plaintiff-insurance company was entitled to the sum of $2,670.10. Enclosed with this letter were the original and duplicate originals of a general release prepared for execution by Elias, which general release was subsequently executed by Elias on September 18, 1951, and delivered to the United States.

The first paragraph of the release, in conventionally broad language, releases the United States of any and all claims Elias may have against the United

States. The second paragraph deals particularly with the release of any claim Elias might have for injuries resulting from his employment by The Jarka Corporation aboard the Sea Hydra.

Because of plaintiff's emphasis upon the third and fourth paragraphs of the release, they are quoted in full:

"And I further agree that, out of the consideration of $11,170.10 referred to above, the sum of $2,670.10 will be retained by United States of America, in escrow, pending the resolution of a controversy presently existing between the United States of America and my employer, The Jarka Corporation, as to which of them is entitled to said sum, which is the amount of an alleged lien asserted by said The Jarka Corporation on the proceeds of the settlement herein, and

"I further agree that, if it should be determined by a court of competent jurisdiction that, as between the said the Jarka Corporation and United States of America, the said The Jarka Corporation is not entitled to the said sum of $2,670.10, or if the said The Jarka Corporation should fail to obtain a determination by a court of competent jurisdiction that, as between it and United States of America, it is entitled to said sum, United States of America may retain the said $2,670.10 for its own use and benefit."

On October 9, 1951, the attorneys for the United States wrote to plaintiff-insurance company, that an application for a pre-trial hearing in this matter would be made on October 17, 1951. On the date for which the pre-trial hearing was scheduled, the attorney of record for plaintiff-insurance company had a discussion with one of the attorneys representing the United States.

Thereafter, the application for a pre-trial hearing was adjourned to December 3, 1951.

However, on November 29, 1951, plaintiff-insurance company advised the at-torneys for the United States by telephone that it was not changing its position on the claimed lien, but would not intervene in the proceeding in the Eastern District of New York; and that the attorneys for the United States could proceed accordingly. Consequently, when the application for a pre-trial hearing came up on December 3, 1951, plaintiff-insurance company did not appear, and the application was "marked off."

Thereafter, the personal injury action by Elias against the United States was disposed of by an order, entered on December 5, 1951, dismissing the libel. Pursuant to the understanding reached with Elias, the United States paid Elias $8,500 out of the agreed settlement of $11,170.10.

Plaintiff-insurance company then filed a complaint on December 16, 1955, in the Southern District of New York, against the United States, claiming that it was entitled to the $2,670.10 held by the Government. It is in such action that the present motions for summary judgment have been made.

Plaintiff's amended complaint alleges jurisdiction under the Tucker Act, 28 U.S.C.A. § 1346(a) (2), and claims that plaintiff is entitled to the $2,670.10 held by the Government under the terms of the settlement agreement entered into between Elias and the Government.

*Plaintiff's Contentions*

Plaintiff's three contentions may be summarized as follows: (1) It has a right to reimbursement of the $2,670.10 because, otherwise, Elias would be unjustly enriched by having been compensated by plaintiff, and then thereafter having recovered, in the eyes of the law, the same amount as damages for the same injury from the Government. (2) Had Elias been paid by the Government the full amount of $11,170.10 (instead of only $8,500) plaintiff would have been entitled to recover directly from Elias the sum of $2,670.10 that plaintiff had paid Elias. However, since the Government has withheld (under the terms of the Elias release) the amount of $2,670.-10, representing plaintiff's payments to

Elias, plaintiff is entitled to recoup that amount from the Government. (3) The Elias release to the Government is a third-party beneficiary contract of which plaintiff is the beneficiary. Plaintiff is entitled to sue on that contract under the Tucker Act, 28 U.S.C.A. § 1346(a)(2). In elaboration of its argument that it is suing under the Tucker Act and not under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., plaintiff relies upon two alleged circumstances: first, that plaintiff could not have been forced to intervene in the Elias action brought in the Eastern District of New York because the funds in dispute had not been paid into the registry of that district court;[1] and, secondly, that Elias had had control of the situation because it was his ultimate disposition of his cause of action that would determine whether plaintiff had a claim against Elias (in the event that he recovered the full sum of $11,170.10) or against the Government (in the event, as happened, that the Government retained $2,670.10).[2]

## Defendant's Contention

The Government's three contentions may be summarized as follows: (1) Plaintiff's claim against the Government was cognizable in admiralty and the exclusive remedy for such claim is provided by the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq. Hence, plaintiff's action, brought under the Tucker Act, cannot be maintained. (2) The release executed by Elias in favor of the Government is not a contract for the benefit of plaintiff. On the contrary, it evinces an intention on the part of the Government to litigate any claim that might be

1. It is a condition for intervention in an admiralty suit that a sum equal to the amount in dispute be paid into the registry of the district court. Under the circumstances of this case, however, plaintiff's argument reveals two weaknesses. The Government, as holder of the sum in dispute, invited plaintiff to intervene in the action in the Eastern District of New York. It would be fatuous to assume or speculate that the Government, having invited plaintiff to intervene, would then refuse to pay the money into the district court's registry, a condition necessary to make such proposed intervention possible. Moreover, the basic question is not whether plaintiff could have been forced to intervene in the action in the Eastern District of New York, but rather whether plaintiff had a remedy in admiralty against the Government. Had plaintiff intervened when invited, there would have been no time-bar problem. Plaintiff gives no reason why it refused to intervene when the opportunity to do so was offered to it.

2. Under the Longshoremen's and Harbor Workers' Act, payments to an injured employee may be made either with or without a formal compensation award having been granted. Where a formal compensation award has been granted, the granting of the award results in an automatic assignment of any cause of action the employee may have against a third party to his employer. (Should the employer obtain a recovery in ex- cess of the award to the employee, the employer is required to turn the excess recovery over to the employee after deducting his reasonable costs for prosecuting the suit.)

However, where compensation payments are made to an employee without a compensation award having been granted, the employee still retains any cause of action he may have against any third party. The Act is silent as to what rights the employer has, where the employee receives compensation payments without an award having been made and then subsequently obtains a recovery in a tort action against a third party. The courts have held that, to allow the employee to keep the compensation payments and also the tort recovery against a third party, would result in a double recovery by the employee for the same injury. To prevent this result, the courts have also held that the employer is entitled to recover from the employee the amount of compensation payments received by him, *after the employee has obtained a tort recovery against a third party.*

Plaintiff's position herein is that plaintiff had no cause of action against anyone until Elias actually settled his action against the Government. Plaintiff's position is correct so far as it goes. But it does not go far enough. The release was executed by Elias on September 18, 1951. Therefore, plaintiff had his alleged cause of action as of September 18, 1951. That cause of action was cognizable in admiralty.

892

asserted against it by plaintiff. (3) In any event, plaintiff has waived any claim it might have had against the Government by endorsing on the insurance policy issued to The Jarka Corporation, the waiver of subrogation clause required by the contract "Warshipsteve 3/1/44 North Atlantic" No. WSA-6983.

*The Determinative Question*

Although the motion papers present three independent questions, the entire matter can be completely and clearly determined by deciding whether plaintiff's action is time-barred for the reason that plaintiff's exclusive remedy was under the Suits in Admiralty Act, and hence the two-year statutory time condition of that Act outlaws plaintiff's action.

█ Plaintiff's claim against the Government was cognizable in admiralty. The Etna, 3 Cir., 1943, 138 F.2d 37; Commercial Trust Company v. United States Shipping Board Emergency Fleet Corporation, 2 Cir., 1931, 48 F.2d 113. The remedy for that claim is provided by the Suits in Admiralty Act, 46 U.S. C.A. § 741 et seq. Where a claimant against the Government has a remedy under the Suits in Admiralty Act, that remedy is exclusive. Johnson v. United States Shipping Board Emergency Fleet Corporation, 1929, 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451.

Assuming *arguendo* the correctness of plaintiff's contentions: (1) that his present claim is not barred by the waiver of subrogation endorsement on the applicable insurance policy and (2) that the release executed by Elias in favor of the Government constitutes a third party beneficiary contract of which plaintiff is the third-party creditor beneficiary, plaintiff would not have the right to bring its action under the Tucker Act, 28 U.S.C.A. § 1346(a) (2). The possible, and here very dubious, availability of a remedy under the literal wording of the Tucker Act, does not alter the doctrine that, where a claimant has an available remedy under the Suits in Admiralty Act, such remedy is exclusive.

█ Where a party appears to have remedies for the same claim under both the Suits In Admiralty Act and the Tucker Act, the remedy provided by the Suits in Admiralty Act is exclusive, notwithstanding the fact that, at the time suit is brought, the claim would be outlawed under the two-year time-bar provision of the Suits in Admiralty Act, but not under the six-year provision of the Tucker Act. 28 U.S.C.A. § 2501. Prudential Steamship Corporation v. United States, 2 Cir., 1955, 220 F.2d 655.

█ Were plaintiff's theory of the case given fullest recognition in all other respects, it is nonetheless clear that plaintiff's claim against the United States was cognizable in admiralty and could have been timely brought under the Suits in Admiralty Act in 1951, when Elias gave his release to the Government. The Elias release was executed on September 18, 1951, but the complaint herein was filed more than four years later—on December 16, 1955. Plaintiff's claim is now time-barred under the Suits in Admiralty Act. Plaintiff's complaint must be dismissed.

Plaintiff's cross-motion for summary judgment is denied.

Defendant's motion for summary judgment is granted.

Settle order on notice.

